IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.

JORGE LUIS SILVA RODRIGUEZ,

           Plaintiff,

vs.

TITI'S INC. and COLFAXHELENA LLC
d/b/a EL JALAPENO
DELUXE RESTAURANT, and ABC COMPANIES
1-10 (names fictitious) and DAN QUISPE, individually,

           Defendants.

**COMPLAINT FOR VIOLATIONS OF THE TRAFFICKING VICTIMS PROTECTION ACT AND UNPAID WAGES**

Plaintiff Jorge Luis Silva Rodriguez ("Mr. Silva Rodriguez" or "Plaintiff"), by and through his attorney, Jacob Aronauer of The Law Offices of Jacob Aronauer, files this Complaint for Violations of the Trafficking Victims Protection Act and Unpaid Wages against the above-listed Defendants.

### I.    PRELIMINARY STATEMENT

1. The facts of this case go beyond the typical wage and hour lawsuits that are frequently before this Court.

2. This is not a circumstance of an unsophisticated small 'mom and pop' business unfamiliar with the intricacies of the Fair Labor Standards Act ("FLSA") and the Colorado Workers Compensation Act ("CWCA"). Nor is this a circumstance of an employer simply trying to cut corners by paying their employees overtime at straight time.

3. This case involving involuntary servitude. Defendants forced Mr. Silva Rodriguez,

a Venezuelan national and father of seven children, to work seven days a week, totaling more than 100 hours on average each week, for no pay and under abusive working conditions. As a result, Defendants are liable to Mr. Silva Rodriguez under the Trafficking Victims Protection Reauthorization Act of 2023 (hereinafter "TVPRA"), 22 U.S.C. § 7101 18 U.S.C. § 1589 and §1590 and §1585.

4. Because Defendants did not pay Mr. Silva Rodriguez any wages whatsoever, Defendants also violated the FLSA, 29 U.S.C. § 201 et seq., because that Act requires employers to pay their employees minimum wage and, in addition, one and one-half times each employee's regular rate of pay for each hour worked beyond 40 hours each workweek.

5. This lawsuit also arises under the Colorado Minimum Wage Act ("CMWA") and Colorado Revised Statutes ("C.R.S.") § 8-4101, et seq., which requires employers to pay their employees all earned, vested, and determinable wages upon the termination of the employment relationship and imposes penalties on employers who do not tender wages due upon receipt of a written demand for such wages.

6. This lawsuit also arises under the CWCA because Defendants failed to pay Mr. Silva Rodriguez the applicable CWCA minimum wage and overtime wage.

7. Finally, Defendants also violated the CMWA, C.R.S. § 8-7101 et seq., as implemented by the Colorado Overtime and Minimum Pay Standards Order ("COMPS"), 7 C.C.R. 1103- 1, because the COMPS requires employers to pay their employees the applicable minimum wage and one-and-one-half times each employee's regular rate of pay for each hour worked beyond forty each workweek.

8. Mr. Silva Rodriguez seeks to recover his unpaid wages, actual and liquidated, compensatory damages, and, to the extent appropriate, pre- and post-judgment interest. He also

2

seeks reasonable attorney fees and costs deriving from Defendants' willful violations of state and federal wage law.

## II.   JURISDICTION AND VENUE

9. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

10. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 (federal question), 18 U.S.C. § 1595 (TVPRA), 29 U.S.C. § 216(b) (FLSA) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's related claims under Colorado law.

11. Venue is proper pursuant to 28 U.S.C. § 1391. The events or omission giving rise to Plaintiff's claims against Defendants arose in Colorado.

12. Defendants employed Plaintiff in an enterprise "engaged in commerce or in the production of goods for commerce" as defined by 29 U.S.C. § 203(s)(1).

13. Defendants operated a unified "enterprise" for a common business purpose as defined by 29 U.S.C. § 203(r)(1).

14. Defendants operated an enterprise whose aggregated, annual gross volume of sales made or business done was not less than $500,000. 29 U.S.C. § 203(s)(10)(A)(ii).

## III.   PARTIES

15. Plaintiff is a resident of the State of Colorado.

16. Defendant Dan Quispe ("Quispe") owns several businesses in Aurora, Colorado, grouped in three different locations. Quispe owns two separate check cashing businesses, a mechanic shop, an auto parts shop, a laundromat, food trucks, a restaurant, a beauty salon, and other businesses.

17. Colfaxhelena LLC ("Colfaxhelena") is a registered Colorado corporation with a

principal street address at 15491 E 14th Pl., Aurora, CO 80011.

18. Quispe is the owner of Colfaxhelena.

19. Titi's Inc. ("Titis") is a registered Colorado corporation with a principal street address at 15490 E Colfax Ave, Unit B, Aurora, CO 80011.

20. Quispe is the owner of Titis.

21. Defendants "ABC Corporations" 1-10, these names being fictitious, are entities with identities that cannot be ascertained as of the filing of this Complaint, certain of which are successors to, predecessors of, or are otherwise related to, Defendant Quispe that relates to Mr. Silva Rodriguez being a victim of involuntary servitude.

## GENERAL ALLEGATIONS

### Mr. Silva Rodriguez's Arrival in the United States and Recruitment by Quispe

22. Mr. Silva Rodriguez currently lives in Colorado with his wife, four of his seven children, his brother, and his nephew. He entered the United States alone, in February 2023, after fleeing threats of persecution and torture in Venezuela. Upon arrival, Mr. Silva Rodriguez was granted parole and allowed to enter the United States to apply for asylum before the Immigration Court.

23. When Mr. Silva Rodriguez arrived in Denver, Colorado, he struggled to find housing and to support himself financially. He eventually obtained causal labor at a welding workshop and then a landscaping company.

24. Plaintiff worked at the welding workshop and landscaping company for approximately six months.

25. During this time, Mr. Silva Rodriguez took his paychecks from the landscaping company to a check cashing business owned by Quispe.

26. Initially, Quispe was a 'friend' to Mr. Silva Rodriguez. Quispe helped Mr. Silva Rodriguez send money back to his wife in Venezuela and during the first few months that Mr. Silva Rodriguez got to know Quispe while cashing his checks, Quispe was polite and appeared to take a genuine interest in both Mr. Silva Rodriguez and his family.

27. Yet, during the months in which Quispe interacted with Mr. Silva Rodriguez at his check cashing business, Quispe intentionally sought information to understand Mr. Silva Rodriguez's vulnerabilities and lack of support system in the United States.

28. Come winter, the landscaping company that Mr. Silva Rodriguez worked for shut down. Mr. Silva Rodriguez told Quispe that he no longer was employed, and Quispe then offered Mr. Silva Rodriguez $100 to detail his car. He paid Mr. Silva Rodriguez the promised $100, cementing Mr. Silva Rodriguez's trust in him, and then asked Mr. Silva Rodriguez to do other jobs for his various businesses.

29. Once, though, Mr. Silva Rodriguez began to work for him in earnest, however, Quispe never paid Mr. Silva Rodriguez for his labor.

**Mr. Silva Rodriguez's Work for Defendants**

30. From October 2023, through December 29, 2023, Mr. Silva Rodriguez worked seven days per week for Defendants in Colorado, totaling more than 100 hours on average each week. From Sunday through Thursday, he worked from approximately 8:00 a.m. to midnight, and on Fridays and Saturdays, he worked from approximately 8:00 a.m. to 2:00 a.m.

31. Mr. Silva Rodriguez's role required him to drive Quispe's food trucks to their locations for business each morning and set up the equipment in the trucks. At the end of the night, he moved the food trucks back to their parked places, cleaned the trucks, and emptied

5

the water.

32. During the day and at night, Mr. Silva Rodriguez also worked at Quispe's restaurant, El Jalapeño Deluxe Restaurant.

33. At the restaurant, Mr. Silva Rodriguez would stock provisions, wash dishes, clean up, put chairs away, and act as security to ensure that Quispe's cooks and servers did not steal from him.

34. Throughout the week, Mr. Silva Rodriguez also performed various odd jobs for Quispe at his direction.

35. Mr. Silva Rodriguez never received any days off or, for that matter, any time off while working for Defendants. Mr. Silva Rodriguez worked when sick and was not even given time off to go to Church. When Mr. Silva Rodriguez asked Quispe if he could go to Church, Quispe responded with "[h]ow are you going to do that?" in an aggressive manner, implying that Mr. Silva Rodriguez had to perform so much labor for Quispe that there was no time for going to Church.

36. Mr. Silva Rodriguez received three inexpensive meals per day from the food trucks or restaurant. In most instances, Plaintiff only received soup.

37. After working for Defendants for approximately one month without pay, Mr. Silva Rodriguez asked Quispe for his owed wages. In response, Quispe said "we'll see how it goes" and "we'll talk later."

38. Quispe, though, never paid Mr. Silva Rodriguez.

39. Later, Mr. Silva Rodriguez's family, his wife and children, arrived in Mexico City from Venezuela. Mr. Silva Rodriguez, having made a similar journey, knew that the trek from Mexico City to Juarez, where his family planned to wait for appointments at the United States

border to seek admission, was perilous.

40. Quispe knew how worried Mr. Silva Rodriguez was for his family. Instead of paying Mr. Silva Rodriguez, Quispe paid the airfare for Mr. Silva Rodriguez's family to travel from Mexico City to Juarez by plane instead of by foot.

41. This was not altruistic on the part of Mr. QUispe. Rather, Quispe did this to further indebt Mr. Silva Rodriguez to him.

42. When Mr. Silva Rodriguez's family arrived in Colorado, Quispe still had not paid Mr. Silva Rodriguez for his labor. Without sufficient funds, Mr. Silva Rodriguez had no choice but to find boarding for his family at a local migrant shelter.

43. Mr. Silva Rodriguez, now tasked with housing seven children and his wife, asked Quispe for his wages again, explaining that he needed to feed and house his family.

44. Instead of paying Mr. Silva Rodriguez his owed wages so that he could afford housing, Quispe told Mr. Silva Rodriguez that he and his family could live in a friend's apartment complex and gave him $1,600 for rent. Later, Mr. Silva Rodriguez discovered that the apartment complex was actually owned by Quispe and that Quispe had invented the "friend" who owned the complex in order to pocket the rent money.

45. Instead of paying Mr. Silva Rodriguez his owed wages so he could afford food, Quispe took Mr. Silva Rodriguez and his wife to a Sam's Club and accompanied them throughout the store and paid for their items. Because Quispe refused to pay Mr. Silva Rodriguez so that he and his family could shop where they wanted, when they wanted, and buy what they wanted, Mr. Silva Rodriguez felt pressured to only choose a limited selection of necessities under Quispe's watchful eye.

**Defendants' Wage Violations**

46. Defendants never paid Mr. Silva Rodriguez for his labor, nor did they keep accurate records or wages or of hours worked by Mr. Silva Rodriguez.

47. Despite that fact that Mr. Silva Rodriguez was working excessive hours, Defendants never paid him the Colorado minimum wage nor the federal minimum wage. Defendants also failed to pay Mr. Silva Rodriguez the contemplated 150 percent rate for overtime hours.

**Defendants' Forced Labor Violations**

48. Quispe forced Mr. Silva Rodriguez to work over 100 hours per week, without breaks, and without compensating him for the hours he worked.

49. Quispe knew that Mr. Silva Rodriguez did not speak English and that he had no support system in the United States.

50. Quispe knew that Mr. Silva Rodriguez had limited or no understanding of the legal system and labor laws in the United States.

51. Quispe knew that Mr. Silva Rodriguez wholly relied on him for housing and for food, and that Mr. Silva Rodriguez felt an immense pressure to provide food and housing for his wife and children.

52. Quispe regularly intimidated Mr. Silva Rodriguez and other undocumented workers, creating a climate of fear at his businesses. Quispe regularly reminded Mr. Silva Rodriguez and others that he had done great things for them, that he had power, that this was not their country, and that they could easily be deported.

53. Quispe kept watch over Mr. Silva Rodriguez while he worked. On at least one occasion, took a photo of Mr. Silva Rodriguez while he was working and later sent him a copy

with a threatening message intimating that he wasn't working hard enough.

54. Mr. Silva Rodriguez continued to work for Quispe even though he wasn't being paid because he was afraid that he and his family would get kicked out of the apartment and freeze to death. He also feared deportation if he did not follow Quispe's rules.

**Mr. Silva Rodriguez's Escape**

55. In late December 2023, Mr. Silva Rodriguez refused to continue to be Quispe's slave. Mr. Silva Rodriguez told Quispe that he would no longer work for him.

56. Not surprisingly, the next month, in January 2024, Quispe evicted Mr. Silva Rodriguez and his family for unpaid rent. Mr. Silva Rodriguez—through a non-profit— offered to work with Quispe to come up with a payment plan so that way Mr. Silva Rodriguez and his family would not be evicted. Quispe refused, as he no longer had Mr. Silva Rodriguez for involuntary servitude.

**FIRST CLAIM FOR RELIEF**
**Violations of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1589(a)**

57. Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

58. It is a violation of the TVPRA to "knowingly provide[] or obtain [] the labor or services of a person…(2) by means of serious harm or threats of serious harm…; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm…" 18 U.S.C. § 1589(a).

59. The TVPRA defines "serious harm" to include nonphysical harm, "including psychological, financial, or reputational harm, that is sufficiently serious…to compel a reasonable person of the same background and in the same circumstances to perform or to

continue performing labor or services to avoid incurring that harm." Id. § 1589(c)(2).

60. Defendants kept Plaintiff working for them against his will and subjected him to a condition of servitude in violation of 18 U.S.C. § 1589 by:

   a. means of threats of serious harm to both Plaintiff and his family, through threats of eviction, starvation, and destitution if Plaintiff did not continue working for Defendants; and

   b. means of threatened abuse of law or legal process, through threats of deportation.

61. Defendants' use of such means to obtain the labor of Plaintiff was knowing and intentional.

62. Plaintiff suffered damages because of Defendants' conduct. These damages include emotional distress.

63. Plaintiff is entitled to compensatory and punitive damages and restitution in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

## SECOND CLAIM FOR RELIEF
**Violations of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1589(b)**

64. Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

65. It is a violation of the TVPRA to "knowingly benefit" from participation in a venture which obtains labor in violation of the TVPRA, while "knowingly or in reckless disregard of the fact" that the venture has obtained labor through such means. 18 U.S.C. § 1589(b).

66. Defendants have knowingly benefited from its participation in the forced labor venture described herein by earning substantial profits from the venture.

67. Defendants knew or recklessly disregarded the fact that the venture described herein by earning substantial profits from the venture.

68. Defendants knew or recklessly disregarded the fact that the venture described herein engaged in obtaining forced labor.

69. Plaintiff suffered damages as a result of Defendants' conduct. These damages include, but are not limited to, emotional distress.

70. Plaintiff is entitled to compensatory and punitive damages and restitution in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

### THIRD CLAIM FOR RELIEF
### Violations of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. 1590(a)

71. Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

72. It is a violation of the TVPRA to "knowingly recruit[],…or obtain[]by any means, any person for labor or services in violation of" the TVPRA.

73. Defendants knowingly and purposefully recruited Plaintiff as described herein, in violation of the TVPRA.

74. Plaintiff suffered damages as a result of Defendants' conduct. These damages include emotional distress and other damages.

75. Plaintiff is entitled to compensatory and punitive damages and restitution in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

## FOURTH CLAIM FOR RELIEF
**Violations of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1549 (a)**

76. Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

77. Attempts to violate the TVPRA are themselves violations of the TVPA. 18 U.S.C. § 1594 (a).

78. Defendants attempted to violate 18 U.S.C. §§ 1589 and 1590, as described herein.

79. Plaintiff suffered damages as a result of Defendants' conduct. Those damages include emotional distress and other damages.

80. Plaintiff is entitled to compensatory and punitive damages and restitution in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

## FIFTH CLAIM FOR RELIEF
**Failure to Pay All Earned, Vested and Determinable Wages**
**Violation of the CWCA (C.R.S. §8-4-101, et seq.)**

81. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

82. Defendants was Plaintiff's "employer" as that term is defined by the CWCA because they employed Plaintiff and others in Colorado. C.R.S. § 8-4-101(6).

83. Plaintiff was Defendants' "employee" as that term is defined by the CWCA because he performed labor for the benefit of Defendants. C.R.S. § 8-4-101(5).

84. Defendants violated the CWCA when they failed to pay Plaintiff all earned, vested and determinable wages upon separation from employment. C.R.S. § 8-4-109.

85. Defendants incurred penalties under the CWCA if they failed to tender wages due within 14 days of receipt of Plaintiff's demand for all wages due to him. C.R.S. § 8-4-109.

86. Defendants did not tender wages due to Plaintiff within 14 days of receipt of Plaintiff's demand for all wages due to him.

87. Plaintiff suffered lost wages and lost use of those wages in an amount to be determined at trial.

88. Plaintiff is entitled to recover in a civil action all earned and vested wages owed to them, statutory penalties and attorney fees and costs of suit.  C.R.S. § 8-4-109; C.R.S. § 8-4-110.

## SIXTH CLAIM FOR RELIEF
### Civil Theft, C.R.S. § 18-4-405

89. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

90. At all material times, Defendants have been an "employer" within the meaning of the Colorado Minimum Wage Act.

91. At all material times, Defendants employed Plaintiff within the meaning of the Minimum Wage Act.

92. Plaintiff was an employee of Defendants within the meaning of the Minimum Wage Act.

93. Defendants' knowing failure to pay minimum wage under the Minimum Wage Act constitutes theft pursuant to C.R.S. § 18-4-401.  *See* C.R.S. § 8-6-116.

94. As a result, Defendants' failure to pay minimum wage under the Minimum Wage Act constitutes civil theft pursuant to C.R.S. § 18-4-405.

95. Plaintiff is entitled to treble damages and attorneys' fees to be determined at trial.

96. Plaintiff is entitled to attorney's fees, costs, statutory interest, and all other relief deemed appropriate by the Court.

### SEVENTH CLAIM FOR RELIEF
### Failure to Pay Overtime Premiums
### Violation of the FLSA (29 U.S.C. § 201 et seq.)

97. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

98. Defendants employed Plaintiff in an enterprise engaged in commerce or in the production of goods for commerce as that term is defined by the FLSA because Defendants had annual gross revenues in excess of $500,000 and employed two or more persons, including Plaintiff, who handled materials which had moved in interstate commerce during each year relevant to this action. 29 U.S.C. § 203(s)(1).

99. Plaintiff is an "employee" as that term is defined by the FLSA. 29 U.S.C. § 203(e).

100. Defendants "employed" Plaintiff as that term is defined by the FLSA. 29 U.S.C. 203(g).

101. Defendants was Plaintiff's "employer" as that term is defined by the FLSA. 29 U.S.C. § 203(d).

102. Defendants violated the FLSA when they refused to pay Plaintiff overtime premiums for hours worked beyond 40 in each given workweek. 29 U.S.C. § 207.

103. Defendants' violations of the FLSA were willful. 29 U.S.C. § 255(a).

104. Plaintiffs has suffered lost wages and lost use of those wages in an amount to be determined at trial.

105. Plaintiff is entitled to recover unpaid overtime premiums, liquidated damages, attorney fees and costs. 29 U.S.C. 216(b).

**EIGHTH CLAIM FOR RELIEF**
**Failure to Pay Minimum Wage**
**Violation of the FLSA (29 U.S.C. § 206 et seq.)**

106. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

107. Defendants employed Plaintiff in an enterprise engaged in commerce or in the production of goods for commerce as that term is defined by the FLSA because Defendants had annual gross revenues in excess of $500,000 and employed two or more persons, including Plaintiff, who handled materials which had moved in interstate commerce during each year relevant to this action. 29 U.S.C. § 203(s)(1).

108. Plaintiff is an "employee" as that term is defined by the FLSA. 29 U.S.C. § 203(e).

109. Defendants "employed" Plaintiff as that term is defined by the FLSA. 29 U.S.C. 203(g).

110. Defendants was Plaintiff's "employer" as that term is defined by the FLSA. 29 U.S.C. § 203(d).

111. Defendants violated the FLSA when they refused to pay Plaintiff minimum wage. 29 U.S.C. § 206.

112. Defendants' violations of the FLSA were willful. 29 U.S.C. § 255(a).

113. Plaintiffs has suffered lost wages and lost use of those wages in an amount to be determined at trial.

114. Plaintiff is entitled to recover unpaid minimum wage, liquidated damages, attorney fees and costs. 29 U.S.C. 206.

**NINTH CLAIM FOR RELIEF**
**Unjust Enrichment**

115. Plaintiff realleges and incorporates by reference all allegations in all preceding

15

paragraphs.

116. Defendants were unjustly enriched by its conduct.

117. Defendants refused to pay Plaintiff the full value of his wages.

118. Defendants knew or should have known that it was not entitled to retain Plaintiff's wages.

## **PRAYER FOR RELIEF**

119. Plaintiff respectfully requests that this Court enter an order:

a. Assuming jurisdiction of this case;

b. Declaring that Defendants violated the FLSA;

c. Granting judgment in favor of Plaintiff and awarding any unpaid wages and liquidated damages pursuant to the FLSA;

d. Declaring that Defendants violated the TVPRA;

e. Granting judgment in favor of Plaintiff and awarding damages, both actual and punitive, pursuant to the TVPRA;

f. Declaring that Defendants violated the Colorado Wage Act;

g. Granting judgment in favor of Plaintiff and awarding wages and penalties owed as a result of Defendants' violation of the of the Colorado Wage Act;

h. Declaring that Defendants violated the Colorado Minimum Wage of Workers Act;

i. Granting judgment in favor of Plaintiff and warding wages and penalties owed as a result of Defendants' violations of the Colorado Minimum Wage Workers Act'

j. Declaring that Defendants breached its contract with Plaintiff;

k. Granting judgment in favor of Plaintiff and awarding damages for Defendants breach of contract;

l.   Declaring that Defendants were unjustly enriched by Plaintiff;

m.  Awarding Plaintiff costs and attorney fees;

n.   Awarding Plaintiff prejudgment and post-judgment interest;

o.   Awarding other punitive and exemplary damages in an amount to be proven at trial;

p.   Awarding compensatory and special damages in an amount to be proven at trial; and

q.   Granting such other relief as this Court deems just and proper.

Respectfully submitted this 16th day of March 2025.

**THE LAW OFFICES OF JACOB ARONAUER**

By:   */s/ Jacob Aronauer*
       Jacob Aronauer
       250 Broadway, Suite 600
       New York, New York 10007
       jaronauer@aronauerlaw.com
       (212) 323-6980
       *Attorney for Plaintiff*